﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/19 Archive Date: 04/29/19

DOCKET NO. 180815-269
DATE: April 30, 2019

ORDER

Entitlement to a disability rating in excess of 40 percent for thoracolumbar spine degenerative disc disease with herniation (low back disorder) from July 1, 2011 to August 15, 2018 is denied.

Entitlement to a disability rating in excess of 10 percent for cervical spine degenerative arthritis (cervical spine disorder) from July 1, 2011 to September 16, 2013 is denied.

Entitlement to a disability rating of 20 percent, but no higher, for cervical spine disorder from September 17, 2013 to August 15, 2018 is granted.

Entitlement to a disability rating in excess of 10 percent for left knee sprain from July 1, 2011 to August 15, 2018 is denied.

Entitlement to a disability rating in excess of 10 percent for right knee strain from July 1, 2011 to August 15, 2018 is denied.

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) prior to April 5, 2017 is granted.

FINDINGS OF FACT

1. During the entire appellate period, the preponderance of the evidence shows that the Veteran’s low back disorder has not resulted in unfavorable ankylosis of the entire thoracolumbar spine, or incapacitating episodes having a total duration of at least six weeks during the past twelve months.

2. Prior to September 17, 2013, the veteran’s cervical spine disorder manifested in forward flexion limited to 35 degrees.

3. From September 17, 2013, forward, the Veteran’s cervical spine disorder resulted in mild scoliosis.

4. During the entire appellate period, the preponderance of the evidence shows that the Veteran’s cervical spine disorder has not resulted in forward flexion of the cervical spine limited to 15 degrees or less; or, favorable ankylosis of the entire cervical spine.

5. During the entire appellate period, the Veteran’s left knee strain has not resulted in flexion limited to 30 degrees or less.

6. During the entire appellate period, the Veteran’s right knee strain has not resulted in flexion limited to 30 degrees or less.

7. Prior to April 5, 2017, the manifestations of the Veteran’s service-connected disabilities were sufficiently incapacitating as to prevent her from obtaining or maintaining substantially gainful employment. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to a disability rating in excess of 40 percent for low back disorder from July 1, 2011 to August 15, 2018 have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.71a, Diagnostic Code 5242.

2. The criteria for entitlement to a disability rating in excess of 10 percent for cervical spine disorder prior to September 17, 2013 have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.71a, Diagnostic Code 5242.

3. The criteria for entitlement to a disability rating of 20 percent, but not higher, for cervical spine degenerative arthritis from September 17, 2013 have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.71a, Diagnostic Code 5242.

4. The criteria for entitlement to a disability rating in excess of 10 percent for left knee sprain have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.10, 4.40, 4.45, 4.71a, Diagnostic Code 5260.

5. The criteria for entitlement to a disability rating in excess of 10 percent for right knee strain have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.10, 4.40, 4.45, 4.71a, Diagnostic Code 5260.

6. The criteria for a TDIU have been met prior to April 5, 2017. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.15, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with the VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty from November 1990 to June 2011. The Veteran selected the Supplemental Claim lane when she submitted the RAMP election form. Accordingly, the May 2018 RAMP rating decision (notice of which was sent on June 25, 2018) considered the evidence of record prior to the issuance of the RAMP rating decision. She timely appealed the RAMP rating decision to the Board and requested evidence submission with the opportunity to submit evidence within 90 days of the notice of disagreement. The Veteran limited her appeal to the issues of increased ratings for her service-connected thoracolumbar disorder, cervical spine disorder, left knee sprain, and right knee sprain. See August 2018 RAMP Selection. As the 90-day window to submit evidence has passed, the Board will proceed to adjudicate the issues on appeal.

During the course of the appeal, the issue of entitlement to a TDIU has been raised by the record. As such, the Board has jurisdiction over the Veteran’s TDIU claim. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

The Board has considered the Veteran’s claims and decided entitlement based on the evidence. Neither the Veteran nor her representative has raised any other issues, nor have any other issues been reasonably raised by the record, with respect to her claims. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

I. Increased Rating Claims

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the veteran, as well as the entire history of the veteran’s disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as “staging the ratings.” See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. 38 C.F.R. § 4.40. It is important that when evaluating disabilities of the musculoskeletal system, functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements must be considered. See 38 C.F.R. § 4.40; DeLuca v. Brown, 8 Vet. App. 202 (1995). Consideration must also be given to weakened movement, excess fatigability and incoordination. 38 C.F.R. § 4.45.

It is the intent of the schedule to recognize painful motion with joint or periarticular pathology as productive of disability. It is also the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59.

1. Entitlement to a disability rating in excess of 40 percent for low back disorder from July 1, 2011 to August 15, 2018

The Veteran’s low back disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5242, which, in pertinent part, provides for the assignment of a 40 percent rating for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating requires unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent rating may be assigned due to unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a.

The General Rating Formula also provides at Note (1) that any associated objective neurologic abnormalities should be separately evaluated under an appropriate diagnostic code. Id.

Note (5) provides that for VA compensation purposes, unfavorable ankylosis is a condition in which the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (0 degrees) always represents favorable ankylosis. Id.

Under the Formula for Rating Intervertebral Disc Syndrome (IVDS) based on Incapacitating Episodes, a 40 percent rating is warranted for incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months. A maximum 60 percent rating requires incapacitating episodes having a total duration of at least six weeks during the past 12 months. 38 C.F.R. § 4.71a, Diagnostic Code 5243.

An incapacitating episode is defined as a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. Id. at Note (1). 

A May 2011 VA examination report reflected the Veteran’s thoracolumbar spine flexion was limited to 30 degrees. No ankylosis was found. See May 2011 VA Examination Report. 

A September 2013 VA examination report reflected the Veteran’s thoracolumbar spine flexion was limited to 60 degrees and normal extension. The Veteran reported occasionally using a lumbar brace. See September 2013 Back Conditions Disability Benefits Questionnaire (DBQ).

In May 2014, the Veteran stated she had been issued a walking cane and updated back brace due to her low back disorder increasing in severity. See May 2014 Statement in Support of Claim. 

At a December 2014 VA examination, the Veteran reported experiencing constant low back pain with limited movement. The examiner noted that the Veteran’s range of motion (ROM) was unable to be tested as she would not sit upright on the examining table due to pain. The examiner further noted that the Veteran was able to bend her spine to pick up clothes from the examining table. See December 2014 Back Conditions DBQ.

An October 2015 statement by the Veteran’s private physician detailed her low back disorder symptomatology. The physician described the Veteran’s low back pain as chronic and severe, and possibly requiring surgery. See October 2015 Medical Statement. 

In a December 2015 VA examination, the Veteran’s forward flexion was limited to 30 degrees, extension was limited to 5 degrees, right and left lateral flexion was limited to 10 degrees, and right and left lateral rotation was limited to 10 degrees. Pain was noted on all ranges of motion. The Veteran reported functional loss and requiring the assistance of her husband. The examiner found no evidence of ankylosis of the spine. The examiner also noted that the Veteran did not have IVDS of the thoracolumbar spine. See December 2015 Back Conditions DBQ. 

On review of the record, the Board finds that the disability picture presented by the Veteran’s low back disorder does not warrant a rating in excess of 40 percent for the entire appellate period. 38 C.F.R. § 4.71a, Diagnostic Code 5242. Specifically, the VA examinations and the Veteran’s medical treatment records indicate no findings of unfavorable ankylosis of the entire thoracolumbar spine. Therefore, the Veteran does not meet the requirement of a 50 percent disability rating under Diagnostic Code 5242. When applying the specific applicable criteria, there is no period during which the preponderance of the evidence shows that a higher rating is warranted for the Veteran’s low back disability.

The Board has considered whether the Veteran would be entitled to a higher rating under a different rating criteria. As stated above, under the IVDS Formula, a 60 percent disability rating may be assigned for incapacitating episodes having a total duration of at least six weeks during the past 12 months. See 38 C.F.R. § 4.71a, Diagnostic Code 5243. The Board finds that the evidence of record indicates that the Veteran does not have IVDS. Additionally, she has not had any incapacitating episodes requiring physician prescribed bed rest, and thus a 60 percent disability rating under the IVDS Formula is unwarranted.

Based on the evidence cited above, the Board finds that the preponderance of the evidence is against the claim of entitlement to a rating in excess of 40 percent for a low back disorder. As the preponderance of the evidence is against the claim for an increased rating, the benefit of the doubt rule does not apply. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. Accordingly, the claim is denied.

2. Entitlement to a disability rating in excess of 10 percent for cervical spine disorder from July 1, 2011 to August 15, 2018

The Veteran’s cervical spine disorder is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5242, which, in pertinent part, provides for the assignment of a 10 percent rating for forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height.

A 20 percent rating is warranted for forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

A 30 percent rating is warranted for forward flexion of the cervical spine limited to 15 degrees or less; or, favorable ankylosis of the entire cervical spine. 

A 40 percent rating for unfavorable ankylosis of the entire cervical spine. 

A 100 percent rating may be assigned due to unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a. 

Turning to the evidence of record, a May 2011 VA examination report reflected the Veteran’s cervical spine flexion was limited to 35 degrees. No ankylosis was found. See May 2011 VA Examination Report. 

A September 2013 MRI scan revealed degenerative changes within the cervical spine with bone spurring and disc bulging. The Veteran was noted to have mild scoliosis within the upper cervical spine. See September 2013 Radiology Report. 

A September 2013 VA examination report reflected the Veteran’s cervical spine flexion and extension were each limited to 40 degrees. See September 2013 Neck Conditions DBQ.

At a December 2014 VA examination, the Veteran reported intermittent neck stiffness and constant pain. The examiner noted that the Veteran’s ROM was unable to be tested as the Veteran was unable to cooperate. The examiner further noted that the Veteran was able to rotate and move her neck in a non-examination setting. No ankylosis was found. See December 2014 Neck Conditions DBQ.

A February 2017 MRI report revealed moderate degenerative disc disease, with a mildly stenosed AP spinal canal. See February 2017 Scanned Report. 

On review of the record, the Board finds that, prior to September 17, 2013, the disability picture presented by the Veteran’s cervical spine disorder does not warrant a rating in excess of 10 percent. 38 C.F.R. § 4.71a, Diagnostic Code 5242. Specifically, VA examinations and post-service treatment records indicate the Veteran’s cervical spine disorder was, at worst, manifested in forward flexion limited to 35 degrees. Prior to September 17, 2013, there is no indication that the Veteran’s cervical spine resulted in forward flexion limited to between 15 degrees and 30 degrees, combined ROM of the cervical spine not greater than 170 degrees, or muscle spasms or guarding severe enough to result in an abnormal gait or abnormal spinal contour. Id. Accordingly, the preponderance of the evidence is against a higher rating prior to September 17, 2013.

The Board finds that, from September 17, 2013, forward, the criteria for a 20 percent rating have been met. In this regard, the September 2013 MRI report revealed the Veteran’s cervical spine disorder resulted in mild scoliosis (i.e., abnormal spinal contour) of the upper cervical spine. Id.

At no point has the Veteran’s cervical spine disorder met the criteria for a higher, 30 percent rating. Rather, VA examination reports and post-service treatment records consistently show no findings of ankylosis of the cervical spine, and the Veteran’s cervical spine forward flexion, at its worst, was measured to 35 degrees. Accordingly, the Board finds that the preponderance of the evidence is against the claim of entitlement to a rating in excess of 20 percent for a cervical spine disorder from September 17, 2013, forward. As the preponderance of the evidence is against the claim, the benefit of the doubt rule does not apply. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. Accordingly, the claim is denied.

3. Entitlement to a disability rating in excess of 10 percent for left knee sprain from July 1, 2011 to August 15, 2018

4. Entitlement to a disability rating in excess of 10 percent for right knee strain from July 1, 2011 to August 15, 2018

The Veteran’s bilateral knee strains are rated as 10 percent disabling for painful limited motion under 38 C.F.R. § 4.71a, Diagnostic Code 5260, which pertains to the limitation of flexion of the knee. Under Diagnostic Code 5260, a noncompensable rating is warranted when leg flexion is limited to 60 degrees. A 10 percent rating is warranted when it is limited to 45 degrees, a 20 percent rating is warranted when it is limited to 30 degrees, and a 30 percent rating is warranted where flexion is limited to 15 degrees. 38 C.F.R. § 4.71a. Normal flexion of the knee is to 140 degrees. 38 C.F.R. § 4.71, Plate II.

When rating musculoskeletal disabilities based on limitation of motion, a higher rating must be considered where the evidence demonstrates additional functional loss due to pain, pursuant to 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45. Under 38 C.F.R. § 4.45, consideration must be given to weakened movement, premature or excess fatigability and incoordination. The diagnostic codes pertaining to range of motion do not subsume those regulations, and the rule against pyramiding does not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including use during flare-ups. DeLuca v. Brown, 8 Vet. App. 202 (1995); Mitchell v. Shinseki, 25 Vet. App. 32 (2011). 

In determining if a higher rating is warranted on that basis, pain itself does not constitute functional loss. Similarly, painful motion alone does not constitute limited motion for the purposes of rating under diagnostic codes pertaining to limitation of motion. However, pain may result in functional loss if it limits the ability to perform normal movements with normal excursion, strength, speed, coordination, or endurance. Functional loss due to pain is to be rated at the same level as functional loss caused by some other factor that actually limited motion. 38 C.F.R. §§ 4.40, 4.45; Mitchell, 25 Vet. App. 32. 

The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. Painful motion should be considered to determine whether a higher rating is warranted on such basis, whether or not arthritis is present. Burton v. Shinseki, 25 Vet. App. 1 (2011).

A May 2011 VA examination report reflected the Veteran’s bilateral knee flexion was limited to 125 degrees, with normal extension. See May 2011 VA Examination Report. 

In September 2013, the Veteran reported constant bilateral knee pain, with sharp pain when she rises from a seated position. The examiner found the ROM measurements to be inconsistent, as the Veteran was able to reach full flexion of her knees during a separate examination. See September 2013 Knee and Lower Leg Conditions DBQ. 

At a February 2014 outpatient treatment, the Veteran reported experiencing knee pain for years. The Veteran’s flexion and extension were recorded as normal, bilaterally. See February 2014 Outpatient Service Note.

An August 2014 treatment note reflects the Veteran had decreased ROM in her knees during active motion, and normal ROM during passive motion. See August 2014 Physician Note. 

At a December 2014 VA examination, the Veteran reported constant pain in her knees which interferes with walking, and intermittent locking. The examiner noted that the Veteran’s ROM was unable to be tested as she would not sit upright or lay down on the examining table due to pain. See December 2014 Knee and Lower Leg Conditions DBQ. 

An October 2016 treatment note reflects the Veteran’s left knee flexion was normal, and she experienced pain at 10 degrees of extension. She reported locking and catching in her left knee. See October 2016 Valdosta Orthopedic Associates. 

Considering the foregoing, the Board finds that the Veteran’s right and left knee disorders do not more nearly approximate a higher, 20 percent, evaluation under Diagnostic Code 5260, even considering functional loss due to pain and other factors. 38 C.F.R. §§ 4.40, 4.45, 4.71a; DeLuca, 8 Vet. App. 202. In this regard, the Board notes that none of the available range of motion measurements meets the criteria for a 20 percent rating. See 38 C.F.R. § 4.71a. Although the Veteran reported being unable to perform ROM testing during the December 2014 VA examination, contemporaneous treatment records reflect normal or slightly decreased ROM. See February 2014 Outpatient Service Note; August 2014 Physician Note; October 2016 Valdosta Orthopedic Associates. 

The Board has considered whether a higher and/or separate rating is warranted under a different diagnostic code, however, the medical evidence of record demonstrates that the Veteran does not have ankylosis of either knee; recurrent subluxation or lateral instability; dislocated or removed semilunar cartilage; extension limited to 10 degrees or more; impairment of the tibia and fibula; or genu recurvatum. Accordingly, ratings under Diagnostic Code’s 5256 through 5259, and 5261 through 5263 are not appropriate.

Based on the evidence cited above, the Board finds that the preponderance of the evidence is against the claim of entitlement to a rating in excess of 10 percent for right knee strain and left knee strain. As the preponderance of the evidence is against the claim for an increased rating, the benefit of the doubt rule does not apply. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. Accordingly, the claim is denied.

II. TDIU

The Veteran claims that her service-connected disabilities have precluded her from obtaining or maintaining substantially gainful employment since her July 2011 separation from active duty service. For the following reasons and bases, the Board finds that entitlement to a TDIU is warranted prior to April 5, 2017. 

Total disability ratings for compensation may be assigned, where the schedular rating is less than 100 percent, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of one or more service-connected disabilities without regard to advancing age or nonservice-connected disability. See 38 C.F.R. §§ 3.340, 3.341(a), 4.16(a); Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993) (holding that the central inquiry is whether the Veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability); see also 38 C.F.R. § 4.19 (unemployability associated with advancing age or intercurrent disability may not be used as a basis for a total disability rating). The claimant’s service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be considered. 38 C.F.R. § 4.16(b).

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 4.15. While the rating is based primarily upon the average impairment in earning capacity, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability, and to the effect of combinations of disability. Id. 

Substantially gainful employment is defined as work which is more than marginal and which permits the individual to earn a living wage. 38 C.F.R. § 4.16(a); Moore v. Derwinski, 1 Vet. App. 356 (1991). Marginal employment shall generally be deemed to exist when a veteran’s earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. 38 C.F.R. § 4.16(a). Marginal employment may also be established, on a facts found basis, when earned annual income exceeds the poverty threshold, including but not limited to employment in a protected environment such as a family business or sheltered workshop. Id. Consideration must be given in all claims to the nature of the employment and the reason for termination. Id. 

Certain percentage requirements must be satisfied in order to qualify for schedular consideration of entitlement to TDIU. Specifically, if unemployability is the result of only one service-connected disability, this disability must be ratable at 60 percent or more. See 38 C.F.R. § 4.16(a). If it is the result of two or more service-connected disabilities, at least one must be ratable at 40 percent or more, with the others sufficient to bring the combined rating to 70 percent or more. Id. Disabilities of one or both upper extremities, or one or both lower extremities, including the bilateral factor, disabilities resulting from a common etiology or a single accident, and disabilities affecting a single body system such as orthopedic disabilities, will be considered as one disability for TDIU purposes. Id. 

Prior to April 5, 2017, the Veteran was in receipt of a combined 90 percent disability rating, with her low disorder being rated at 40 percent which is sufficient to avail her of schedular TDIU under 38 C.F.R. § 4.16(a). The only remaining consideration, then, is whether her service-connected disorders render her unable to obtain and maintain substantially gainful employment.

In support of her claim, the Veteran submitted a statement by her private physician, which opined that she is permanently and totally disabled, and is not suitable for gainful employment. In reaching this determination, the physician relied on the severity of the Veteran’s back and knee disabilities which required her spouse to become her primary caregiver. See October 2015 Antoinette Patterson Statement.

A November 2016 decision by the Social Security Administration (SSA) found the Veteran to be disabled since July 1, 2011 due to her musculoskeletal disorders and psychiatric disorder. See November 2016 SSA Decision. The Board notes that the Veteran is service-connected for all of the disabilities considered by SSA. 

The Board notes that there is a negative opinion in the form of several September 2013 VA examination reports. The examiner opined that the Veteran’s service-connected disabilities did not preclude her from all types of employment. The examiner’s opinions were confined to the Veteran’s individual disabilities, and did not comment on the aggregate impact her service-connected disabilities have on her employability. 

In light of the evidence reflecting that the impact of the Veteran’s service-connected disorder renders her unemployable, the Board finds that, resolving reasonable doubt in the Veteran’s favor, a TDIU is warranted prior to April 5, 2017. Accordingly, a TDIU is granted from July 1, 2011 through April 4, 2017. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

As indicated above, the Board notes that the Veteran is in receipt of a 100 percent combined schedular rating as of April 5, 2017. A TDIU rating is contingent on the schedular rating being less than total. 38 C.F.R. § 4.16(a). However, in Bradley v. Peake, 22 Vet. App. 280 (2008), the United States Court of Appeals for Veterans Claims (Court) held that the issue of entitlement to a TDIU may not be moot based on the assignment of a total schedular rating under certain circumstances, in particular where special monthly compensation (SMC) could be awarded based on the consideration of a TDIU rating under 38 U.S.C. § 1114(s). See also Buie v. Shinseki, 24 Vet. App. 242, 250-51 (2011). Although no additional disability compensation may be paid when a total schedular disability rating is already in effect, the Court’s decision in Bradley recognizes that a separate award of a TDIU predicated on a single disability may form the basis of an award of SMC. 

This case, however, is distinguished from Bradley in that the grant of the Veteran’s TDIU prior to April 5, 2017, is not predicated on a single disability but is predicated on multiple service-connected disabilities. Specifically, the grant of entitlement to a TDIU is based largely on the aforementioned multiple VA examinations documenting the severity of the Veteran’s musculoskeletal disorders. Therefore, this grant of TDIU is based on impairment from several service-connected disabilities, and not just a single disability. The Veteran does not assert, nor does the evidence show, that any single service-connected disability has rendered her unemployable. Thus, entitlement to a TDIU based upon any single service-connected disability from April 5, 2017, forward is not in order. 

Further, as the Veteran has no individual service-connected disability that is rated at 100 percent, and her TDIU is predicated on multiple service-connected disabilities, the percentage rating criteria for SMC at the housebound rate have not been met at any point during the period of time on appeal.

 

P.M. DILORENZO

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD S. M. Stedman, Associate Counsel